John H. Gomez (SBN 171485)
John P. Fiske (SBN 249256)
Ahmed S. Diab, Esq. (SBN 262319)
**GOMEZ TRIAL ATTORNEYS**
655 W. Broadway, Suite 1700
San Diego, California  92101
Telephone:  (619) 237-3490/Fax: (619) 237-3496

Ron Simon, Texas. Bar No. 00788421
**RON SIMON & ASSOCIATES**
800 Gessner Road, Suite 1240
Houston, Texas 77024
Telephone: (713) 335-4900/Fax: (713) 335-4949
(Pending Pro Hac Vice)

**Attorneys for Plaintiff**

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MILDRED HENDRICKS, deceased, by and through her successor-in-interest, PAMELA HENDRICKS DRAWBAUGH; and PAMELA HENDRICKS DRAWBAUGH, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>ANDREW AND WILLIAMSON SALES CO., INC. d/b/a ANDREW & WILLIAMSON FRESH PRODUCE, and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. **'15CV2038 JAH NLS**<br><br>(Unlimited Civil)<br><br>**COMPLAINT FOR DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff MILDRED HENDRICKS, deceased, by and through her successor-in-interest, Pamela Hendricks Drawbaugh, and PAMELA HENDRICKS DRAWBAUGH, an individual, by and through their attorneys of record **Ron Simon & Associates** and **Gomez Trial Attorneys**, hereby allege as follows:

-1-

**COMPLAINT FOR DAMAGES**

## PARTIES

1. Plaintiff Pamela Hendricks Drawbaugh is an adult resident of Travis County, Texas. She brings suit individually and as successor-in-interest to her aunt, Mildred Hendricks, deceased, and for the wrongful death of her aunt, Mildred Hendricks.

2. Defendant Andrew & Williamson Sales, Co., Inc. d/b/a Andrew & Williamson Fresh Produce, (hereinafter "A&W" or "Defendant") is a California corporation headquartered in San Diego County, California that imports, manufactures, distributes and sells *Limited Edition®* label cucumbers from Baja Mexico, including to Red Lobster. It may be served through its agent for service of process, Morgan Scudi, at 5440 Morehouse Drive, Suite 4400, San Diego, California 92121.

3. Plaintiff does not know the true names and capacities, whether corporate or otherwise, of those Defendants sued herein as DOES 1 through 50, inclusive, and Plaintiff prays leave that when the true names of said Defendants are ascertained Plaintiff may amend this complaint to insert the same with appropriate allegations. Plaintiff is informed and believes, upon such information and belief, alleges that each of the Defendants designated herein by such fictitious names are responsible in some manner for the events described herein, and caused injuries and damages to Plaintiff.

## JURISDICTION AND VENUE

4. Plaintiff hereby incorporates paragraphs 1 through 3 above.

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and because Defendants are all either incorporated and/or have their principal place outside of the state in which the Plaintiff resides.

6. Jurisdiction and venue are proper in California because the Defendant conducts regular business activities in California and Andrew & Williamson Fresh Produce is headquartered in San Diego County, California. Further, Defendant engages in substantial, continuous, and systematic contacts with the State of California,

purposefully directing its activities towards California, including the placement of their goods into the stream of commerce with the intent and expectation that they will likely be repurchased and used by consumers in California.  This litigation arises out of those activities.

## GENERAL ALLEGATIONS

7.  Plaintiff hereby incorporates paragraphs 1 through 5 above.

**The *Salmonella* Bacterium**

8.  *Salmonella* is an enteric bacterium, which means that it lives in the intestinal tracts of humans and other warm-blooded animals.  *Salmonella* bacteria are typically transmitted to humans by food or water contaminated with feces.  Such foods usually look and smell normal, meaning that a consumer has no warning of the fact of contamination.

9.  After ingestion, *Salmonella* bacteria travel to the lumen of the small intestines, then penetrate the epithelium, multiply, and enter the blood.  This infection process – also referred to as the incubation period – usually takes 6 to 72 hours for the onset of symptoms.  As few as 15-20 cells of *Salmonella* bacteria can cause infection.

10.  The acute symptoms of *Salmonella* gastroenteritis (or *Salmonellosis*) include nausea, vomiting, diarrhea, fever, abdominal cramping and/or stomach pain, dysuria, muscle pain, fatigue, and dehydration.

11.  Doctors typically treat the symptoms of *Salmonellosis* with anti-nausea or anti-diarrhea medications.  Some physicians prescribe antibiotics.  Many severe cases may require intravenous fluids for treatment of dehydration, usually in an emergency room or urgent-care setting.  In others, long-term side-effects, such as Irritable Bowel Syndrome (IBS) or Reactive Arthritis (RA) can develop, requiring extensive ongoing medical treatment and care. The elderly, infants, and those with impaired immune systems are more likely to experience severe illness or death from ingesting *Salmonella* bacteria.

///

**Plaintiff Mildred Hendricks' Wrongful Death**

12.  Plaintiff Mildred Hendricks, a 99 year old resident of San Diego County, California, unknowingly consumed *Limited Edition*® label cucumbers in early August, 2015.

13.  The *Limited Edition*® label cucumbers she consumed were imported, produced, packaged, marketed, and sold by Defendant A&W.

14.  When Plaintiff consumed the cucumbers, she was unaware that they were contaminated with *Salmonella*.

15.  After consuming the cucumbers, Plaintiff experienced symptoms consistent with *Salmonella* poisoning (i.e. one or more of the following: nausea, vomiting, diarrhea, fever, stomach cramps, muscle aches, abdomen pain, weakness, and dehydration).

16.  Plaintiff sought and received significant medical treatment as a result of her illness, including being hospitalized.

17.  Unfortunately, on August 17, 2015, Plaintiff died as a result of her injuries.

**The Salmonella Poona Outbreak**

18.  In August of 2015, the Centers for Disease Control and Prevention (CDC), U.S. Food and Drug Administration (FDA), and state and local health agencies became aware of a growing number of *Salmonella* Poona cases spread across many states using PulseNet.  PulseNet, the national subtyping network of public health and food regulatory agency laboratories, employed DNA "fingerprinting" on *Salmonella* bacteria isolated from ill people by using a technique called pulsed-field gel electrophoresis.

19.  As of September 8th, the CDC had identified 341 victims with the outbreak strains of *Salmonella* Poona from 30 states, including: Alaska (9), Arizona (66), Arkansas (6), California (72), Colorado (14), Hawaii (1), Idaho (8), Illinois (6), Kansas (1), Kentucky (1), Louisiana (4), Minnesota (12), Missouri (8), Montana (10), Nebraska (2), Nevada (7), New Mexico (18), New York (4), North Dakota (1), Ohio (2), Oklahoma (8), Oregon (8), Pennsylvania (2), South Carolina (7), Texas (18), Utah (30),

Virginia (1), Washington (10), Wisconsin (2), and Wyoming (3).

20.     According to the CDC, the first identified victim began to suffer the symptoms of salmonellosis on July 3rd, with the latest victim reporting onset of symptoms on August 26th. But because there is a 2 to 4 week time-elapse between when a person begins to suffer the symptoms of salmonellosis and when the CDC numbers capture that person's illness in its official count, the number of illnesses is likely to continue to rise in the coming weeks.

21.     The victims identified so far range in age from less than 1 year to 99, with a median age of 13. Fifty-three percent of victims are children younger than 18 years of age, while just over half (or 57%) are women. So far, approximately one third of the victims interviewed report being hospitalized. The CDC has reported two deaths, including one in California and one in Texas.

**FDA, CDC Link Outbreak to Andrew & Williamson Fresh Produce Cucumbers**

22.     Originally, health officials identified 11 separate *Salmonella* clusters in 7 states. In each of these, officials identified cucumbers as the likely source.

23.     By using trace-back information gathered in victim interviews and from the establishments linked to these illnesses, investigators were able to identify tainted cucumbers imported from the Mexican Baja region and distributed by Andrew & Williamson Fresh Produce as the likely source of the outbreak.

24.     Several state health and agriculture departments collected leftover cucumbers from restaurants and grocery stores where ill people reported having eaten or shopped to test for the presence of *Salmonella*. The San Diego County Health and Human Services Agency also visited the A&W facility and collected cucumbers for testing.

25.     By September 3rd, the CDC and FDA had enough information to confidently identify imported cucumbers from the Baja region of Mexico, and distributed by Andrew & Williamson Fresh Produce under the label *Limited Edition*®, as the source of the Salmonella Poona outbreak sweeping the nation. Since then,

**COMPLAINT FOR DAMAGES**

several state health and agriculture departments have collected and tested leftover cucumbers from retail locations for the presence of *Salmonella*. According to the CDC, the Nevada Department of Health and Human Services isolated one of the outbreak strains of *Salmonella* Poona from a cucumber collected from a retail location. In addition, the Arizona Department of Health Services and the Montana Department of Public Health and Human Services have now isolated *Salmonella* from cucumbers collected from retail locations in those states, and the San Diego County Health and Human Services Agency isolated *Salmonella* in cucumbers at the Andrew & Williamson Fresh Produce facility.

26. The *Limited Edition*® cucumbers, referred to as a "slicer" or "American" cucumbers are dark green in color. Typical length is 7 to 10 inches. They are traditionally sold in a bulk display without any individual packaging or plastic wrapping.

**Andrew & Williamson Fresh Produce Issues Recall**

27. On September 4, 2015, after consultation with the FDA, Andrew & Williamson Fresh Produce recalled all cucumbers sold under the *Limited Edition*® brand label during the period from August 1, 2015 through September 3, 2015. The recalled cucumbers had been shipped in a black, green, yellow, and craft colored carton bearing the words "Limited Edition Pole Grown Cucumbers." Labeling on the cases of recalled cucumbers identified them as product grown and packed by Rancho Don Juanito in Mexico. As noted above, they were often sold in bulk.

28. According to A&W, these *Limited Edition*® cucumbers were distributed in the states of Alaska, Arizona, Arkansas, California, Colorado, Florida, Idaho, Illinois, Kansas, Kentucky, Louisiana, Minnesota, Mississippi, Montana, Nevada, New Jersey, New Mexico, Oklahoma, Oregon, South Carolina, Texas, and Utah, but reached customers through retail, food service companies, wholesalers, and brokers (including, but not limited to, these establishments: In-N-Out, Save Mart, Sam's Club, The Capital Grille, United, Albertson, HEB, Safeway, Kroger, Walmart, Costco, Fresh & Easy, and

Red Lobster).

29. As of September 4th, the CDC had identified victims in Missouri, Nebraska, North Dakota, New York, Ohio, Virginia, Washington, Wisconsin, and Wyoming - all states which are NOT on the list of states that received the cucumbers directly from A&W.

30. In addition, A&W shipped the tainted cucumbers directly to New Jersey, Florida, Kentucky, and Mississippi. These states have not yet identified victims as of September 4th.

31. This investigation is ongoing, and the CDC, FDA, and state and local public health agencies are continuing to identify additional victims through PulseNet.

## FIRST CAUSE OF ACTION

### (Strict Products Liability)

32. Plaintiff hereby incorporates paragraphs 1 through 30 above.

33. At all times, Defendant was in the business of importing, manufacturing, distributing, and/or marketing *Limited Edition*® cucumbers grown and packed by Rancho Don Juanito in Mexico and distributed by A&W as "Limited Edition Pole Grown Cucumbers" throughout the United States ("product").

34. There was a manufacturing defect in the product when it left Defendant's possession and control. The product was defective because it contained *Salmonella.* The presence of *Salmonella* was a condition of the product that rendered it unreasonably dangerous.

35. There was a marketing defect in the product when it left Defendant's possession and control. The product was defective because it contained *Salmonella* and Defendant failed to give adequate warnings of the product's dangers that were known or by the application of reasonably developed human skill and foresight should have been known. Defendant also failed to give adequate warnings and instructions to avoid such dangers. Defendant's failure to provide such warnings and instructions rendered the product unreasonably dangerous.

36. Defendant's conduct was a direct, proximate, and producing cause of Plaintiff's injuries and damages set forth below.

37. Defendant is therefore strictly liable for importing, manufacturing, distributing, marketing, and selling defective and unreasonably dangerous product and introducing it into the stream of commerce.

## SECOND CAUSE OF ACTION

### (Negligence, including Negligence Per Se)

38. Plaintiff hereby incorporates paragraphs 1 through 36 above.

39. Defendant owed Plaintiff a duty of ordinary care in the manufacture, preparation, testing, packaging, marketing, distribution, and selling of the product in question. Further, Defendant owed Plaintiff the duty of warning or instructing Plaintiff of potentially hazardous or life-threatening conditions with respect to the product.

40. Defendant breached its duties in one or more of at least the following ways:

   a. negligently importing, manufacturing, distributing, and marketing the product;

   b. failing to properly test the product before placing it into the stream of commerce;

   c. failing to prevent human and/or animal feces from coming into contact with the product;

   d. failing to adequately monitor the safety and sanitary conditions of its premises;

   e. failing to apply its own policies and procedures to ensure the safety and sanitary conditions of its premises;

   f. failing to adopt and/or follow FDA recommended good manufacturing practices;

   g. failing to take reasonable measures to prevent the transmission of *Salmonella* and related filth and adulteration from its premises;

   h. failing to properly train and supervise its employees and agents to

prevent the transmission of *Salmonella* and related filth and adulteration from its premises;

i. failing to warn Plaintiff and the general public of the dangerous propensities of the product, particularly that it was contaminated with *Salmonella*, despite knowing or having reason to know of such dangers; and

j. failing to timely disclose post-sale information concerning the dangers associated with the product.

41. Furthermore, Defendant had a duty to comply with all applicable health regulations, including the FDA's Good Manufacturing Practices Regulations, 21 C.F.R. part 110, subparts (A)-(G), and all statutory and regulatory provisions that applied to the import, manufacture, distribution, storage, and/or sale of the product or product ingredients, including but not limited to, the Federal Food, Drug, and Cosmetics Act, § 402(a), as codified at 21 U.S.C. § 342(a), which bans the manufacture, sale and distribution of any "adulterated" food, and California's Sherman Food, Drug, and Cosmetic Act, CA Health & Safety Code § 110545, which imposes an identical ban.

42. Under both federal and applicable state law, food is adulterated if it contains a "poisonous or deleterious substance which may render it injurious to health."

43. The product was adulterated because it contained *Salmonella*. Thus, by the import, manufacture, distribution, delivery, storage, sale, and/or offering for sale of the product and/or the product's ingredients, Defendant breached its statutory and regulatory duties.

44. Plaintiff was a member of the classes sought to be protected by the regulations and statutes identified above.

45. Defendant's conduct was a direct, proximate, and producing cause of Plaintiff's injuries and damages set forth below.

46. All dangers associated with the product were reasonably foreseeable and/or scientifically discoverable by Defendant at the time Defendant placed the product into

the stream of commerce.

## THIRD CAUSE OF ACTION

### (Breach of Implied Warranties)

47. Plaintiff hereby incorporates paragraphs 1 through 45 above.

48. Defendant is a merchant who manufactures, imports, distributes, and markets product.

49. Plaintiff is a consumer.

50. Defendant breached the implied warranty of merchantability by impliedly warranting that their product was of merchantable quality and fit for human consumption when it was not due to the presence of *Salmonella*. Plaintiff reasonably relied upon Defendant's skill and judgment as to whether the product was of merchantable quality and fit for human consumption.

51. Defendant breached the implied warranty of fitness for a particular purpose by holding out unreasonably dangerous product (i.e. product containing *Salmonella*) to the public as being safe when they knew or had reason to know that the product was not safe and that the public would consume the product.

52. Defendant did not disclaim these implied warranties.

53. Defendant's conduct was a direct, proximate, and producing cause of Plaintiff's injuries and damages set forth below.

## DAMAGES

54. Plaintiff hereby incorporates paragraphs 1 through 52 above.

55. Defendant's conduct was a direct, proximate, and producing cause of Plaintiff's injuries and damages, including but not limited to damages in the past and future for the following: pain and suffering, mental anguish, physical impairment, physical disfigurement, loss of enjoyment of life, medical and pharmaceutical expenses, travel and travel-related expenses, emotional distress, lost wages, lost earning capacity, loss of consortium, punitive and/or exemplary damages and attorneys' fees (to the extent recoverable) and other general, special, ordinary, incidental and consequential

damages as would be anticipated to arise under the circumstances.

56. Mildred Hendricks died as a direct result of Defendant's actions outlined above. Plaintiff Pamela Hendricks Drawbaugh seeks damages individually, and as successor-in-interest to the claims of the decedent Mildred Hendricks, through a survivorship action on her behalf pursuant to California Code of Civil Procedure § 377.30, et. seq.

57. Plaintiff Pamela Hendricks Drawbaugh also seeks wrongful death damages allowable under California Code of Civil Procedure § 377.60, et. seq.

58. WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

    a. Past and future economic and non-economic damages;
    b. Court costs;
    c. Pre- and post-judgment interest at the highest rate allowed by law; and
    d. For such other general and special relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all triable claims.

Dated:  September 14, 2015         **GOMEZ TRIAL ATTORNEYS**

                                    By:  /s/ Ahmed S. Diab
                                    John H. Gomez, Esq.
                                    John P. Fiske, Esq.
                                    Ahmed S. Diab, Esq.

                                    **RON SIMON & ASSOCIATES**
                                    Ron Simon
                                    (Pending Pro Hac Vice)

                                    **Attorneys for Plaintiff**